UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION



FILED
SEP 26 2012
U.S. DISTRICT COURT
FLINT, MICHIGAN

UNITED STATES OF AMERICA,
        Plaintiff,

v.

D-1: RONALD LEE BRITO;
D-2: BONNIE BRITO;
D-3: JOHN JAMES MISSITTI;
D-4: THOMAS WINSTON MOORE; and
D-5: MARK J. CARPENTER,
        Defendants.
_____/

Case No. 4:12-CR-20176

Hon. MARK A. GOLDSMITH
United States District Judge

## FIRST SUPERSEDING INDICTMENT

**THE GRAND JURY CHARGES:**

### COUNT ONE
**[all defendants]**
**[18 U.S.C. §§ 1343 and 1349: conspiracy to commit wire fraud]**

That from about 2005 until the date of this indictment, RONALD LEE BRITO; BONNIE BRITO; THOMAS WINSTON MOORE; JOHN JAMES MISSITTI; and MARK J. CARPENTER, in the Eastern District of Michigan and elsewhere, conspired and agreed with each other, and with other persons, to

commit wire fraud, in violation of Sections 1343 and 1349 of Title 18, United States Code, by conducting a scheme to defraud investors, which scheme is more particularly described below.

*The Investment Scheme ("GetMoni.Com")*

1. Part of the scheme was that RONALD LEE BRITO, a resident of California, would maintain and control bank accounts in his own name and in various corporate names, including Infinity Trading LLC; GetMoni.Com; and others.

2. Part of the scheme was that RONALD LEE BRITO and BONNIE BRITO would solicit investments in GetMoni.Com, which they would represent were to be loaned at high rates of interest to various enterprises, including "air conditioning contractors," "PJM Kingman Mine," and others.

3. Part of the scheme was that RONALD LEE BRITO and BONNIE BRITO would tell investors that money invested in GetMoni.Com would be safe and secure, and that it would receive high rates of interest from the profits of the various enterprises.

4. Part of the scheme was that RONALD LEE BRITO and BONNIE BRITO would defraud investors in GetMoni.Com by falsely describing the nature and circumstances of the various enterprises to which GetMoni.Com would be loaning

money; exaggerating the likely profits of those enterprises; and minimizing the risks of loss.

5. Another part of the scheme was to defraud investors in GetMoni.Com by representing that their investments would be loaned to the various enterprises, when in fact, as RONALD LEE BRITO and BONNIE BRITO knew and intended, they would use the majority of the money invested in GetMoni.Com to make payments owed to prior investors in GetMoni.Com, rather than loaning it to the various enterprises they were touting. Such a scheme is often called a "Ponzi," after Charles Ponzi, who conducted a similar scheme in Massachusetts in 1920; see, *In re Ponzi*, 269 F. 997 (D.Mass. 1920). As a judge stated in that case, "So long as the current of money continued to flow in, he could pay the first investors with the receipts from the latter. It was another instance of robbing Peter to pay Paul ...."

6. JOHN JAMES MISSITTI, a resident of Michigan, joined the conspiracy by representing himself as a partner of RONALD LEE BRITO in GetMoni.Com; actively soliciting new investors in Michigan and elsewhere in exchange for kickbacks ("commissions") from RONALD LEE BRITO; falsely describing the nature, circumstances, safety, and likely profitability of the various enterprises

supposedly to be funded by GetMoni.Com; introducing potential investors to RONALD LEE BRITO and BONNIE BRITO; and denying that GetMoni.Com was a "Ponzi" scheme, despite knowing that the investments were being falsely described, and that the majority of the investors' money was being be used to pay earlier investors in GetMoni.Com.

7. Another part of the scheme was that potential investors would be directed to transfer money to GetMoni.Com by wire from their own financial accounts to a GetMoni.Com bank account in California. When the investors' accounts were not located in California, such transfers would be wire communications in interstate or foreign commerce, within the meaning of Section 1343 of Title 18, United States Code.

8. Another part of the scheme was that, to attract new investment into GetMoni.Com, new business proposals would be developed. Sometime during 2007, therefore, RONALD LEE BRITO and THOMAS WINSTON MOORE agreed to create "PJM Kingman Mine," a company to be run by MOORE for the ostensible purpose of extracting silver and/or gold from an old, unused mine in Arizona, and financed by BRITO through GetMoni.Com.

9.  During 2007 and 2008 RONALD LEE BRITO and THOMAS WINSTON MOORE caused to be prepared, and THOMAS WINSTON MOORE; RONALD LEE BRITO; BONNIE BRITO; and JOHN JAMES MISSITTI caused to be distributed a prospectus for investments through GetMoni.Com into the PJM Kingman Mine, which prospectus contained false and misleading statements concerning the mine and the likelihood of extracting minerals at a profit.

10.  During 2007 and 2008 THOMAS WINSTON MOORE joined the conspiracy by actively promoting the PJM Kingman Mine venture to investors in GetMoni.Com, knowing that he was defrauding the investors by making, and causing others to make misleading and false statements concerning the mine and the likelihood of extracting minerals from the mine at a profit.

11.  During 2008 MARK J. CARPENTER, doing business as TGBG Financial Planning, LLC, agreed with RONALD LEE BRITO to solicit investments in GetMoni.Com in exchange for a 5% commission. MARK J. CARPENTER then modified the false and misleading prospectus described above, by identifying himself and TGBG Financial Planning, LLC, as "Key Personnel" in the project.

12.  MARK J. CARPENTER joined the conspiracy by soliciting investments to be made to GetMoni.Com through TGBG Financial Planning, LLC; distributing

the PJM Kingman Mine prospectus to potential investors; falsely representing that he had visited the mine and found it to be in "full-blown operation"; "guaranteeing" that it was a safe and legitimate investment; and fraudulently diverting money invested in TGBG Financial Planning, LLC, for other purposes into GetMoni.Com without the permission of his investors.

13. Another part of the scheme was that RONALD LEE BRITO and JOHN JAMES MISSITTI would discourage investors from complaining to law enforcement officers about GetMoni.Com by warning that those who complained would be the last to receive payments when new investments were received. Nevertheless, during November 2009 the Michigan Office of Financial and Insurance Regulation (OFIR) issued a cease and desist order, requiring GetMoni.Com; RONALD LEE BRITO; and JOHN JAMES MISSITTI to stop selling promissory notes in violation of Michigan securities laws.

14. Another part of the scheme was that RONALD LEE BRITO; BONNIE BRITO; JOHN JAMES MISSITTI; THOMAS WINSTON MOORE, and MARK J. CARPENTER would continue to assure investors that their investments in GetMoni.Com were still secure, and that they would receive what was owed to them as soon as money was received from new investors.

## COUNTS TWO THROUGH FORTY-FOUR
## [D-1: RONALD LEE BRITO and D-3: JOHN JAMES MISSITTI]
## [18 U.S.C. § 1343: wire fraud]

That on or about the dates set forth on the following schedule of counts, in the Eastern District of Michigan and elsewhere, RONALD LEE BRITO and JOHN JAMES MISSITTI, having devised the scheme to defraud described in Count One above, caused to be transmitted by means of wire communication in interstate commerce into the State of California writings, signs, and signals for the purpose of executing such scheme by transferring the amounts of money set forth on said schedule from the financial accounts of the investors named in said schedule to the account of GetMoni.Com at Washington Mutual Bank/JPMorgan Chase Bank, account number 357-0756856; all in violation of Section 1343 of Title 18, United States Code:

| Count | Date | Amounts | Investors |
|---|---|---|---|
| 2 | 3/28/2007 | $5,000 | Gilbert Hidalgo |
| 3 | 4/10/2007 | $65,000 | Lisa Schummer |
| 4 | 4/17/2007 | $172,000 | Keith Corwin |
| 5 | 5/1/2007 | $90,000 | Brett Daniel |
| 6 | 5/7/2007 | $20,000 | Carol Bence |

| | | | |
|---|---|---|---|
| 7 | 5/22/2007 | $100,000 | Clare Drexler |
| 8 | 5/22/2007 | $15,000 | Ryan Neil |
| 9 | 6/14/2007 | $40,000 | Peter Kozel |
| 10 | 6/25/2007 | $10,000 | Colin Stephen |
| 11 | 7/9/2007 | $100,000 | Jeffrey Ford |
| 12 | 7/13/2007 | $15,000 | Heather Murphy |
| 13 | 7/16/2007 | $25,000 | Mark Dipzinski |
| 14 | 7/20/2007 | $10,000 | Janet Simmer |
| 15 | 7/27/2007 | $25,000 | Albert Frierson |
| 16 | 8/27/2007 | $20,000 | Catherine Christensen |
| 17 | 8/30/2007 | $10,000 | Ann Monk |
| 18 | 8/302007 | $5,000 | Georgia Patrick |
| 19 | 9/5/2007 | $64,000 | James Lemanski |
| 20 | 9/24/2007 | $10,000 | Carolyn Vasquez |
| 21 | 10/15/2007 | $15,000 | Terri Schummer |
| 22 | 11/8/2007 | $117,500 | Tony Allen Moody |
| 23 | 12/5/2007 | $10,000 | Edwin Weston |

| | | | |
|---|---|---|---|
| 24 | 12/13/2007 | $47,500 | William Long |
| 25 | 12/19/2007 | $50,000 | John Bobbitt |
| 26 | 1/7/2008 | $15,000 | James Bueche |
| 27 | 1/11/2008 | $75,000 | Pam Galliway |
| 28 | 1/15/2008 | $25,000 | Julie Sherman |
| 29 | 1/16/2008 | $25,000 | Diann Sumera |
| 30 | 1/28/2008 | $25,000 | LeeAnne Zeffero |
| 31 | 1/29/2008 | $55,000 | Sheryl Medore |
| 32 | 2/4/2008 | $37,000 | Marcia & Ray Karbowski |
| 33 | 2/11/2008 | $45,000 | Randy Richardson |
| 34 | 3/3/2008 | $20,000 | Rex Ferguson |
| 35 | 4/9/2008 | $25,000 | Peoria Thomas |
| 36 | 4/15/2008 | $41,000 | Michael Wager |
| 37 | 5/1/2008 | $10,000 | Susan Kruse |
| 38 | 7/14/2008 | $30,000 | Carole & Robert Dipzinski |
| 39 | 7/28/2008 | $20,000 | Scott Lutey |
| 40 | 8/15/2008 | $20,000 | Beth Bertschy (MRobbins) |
| 41 | 9/11/2008 | $10,000 | Daniel Lazar |

| 42 | 11/7/2008 | $50,000 | Robert Long |
| 43 | 3/30/2009 | $25,000 | Ethel Long |
| 44 | 5/21/2009 | $56,000 | Gordon Sanders |

### COUNTS FORTY-FIVE THROUGH SIXTY-FOUR
### [D-5: MARK J. CARPENTER]
### [18 U.S.C. § 1343: wire fraud]

That on or about the dates set forth on the following schedule of counts, in the Eastern District of Michigan and elsewhere, MARK J. CARPENTER, having joined the conspiracy and devised the scheme to defraud investors in TGBG Financial Planning, LLC, by investing their money into GetMoni.Com, as described in Count One, above, caused to be transmitted by means of wire communication in interstate commerce into the State of California writings, signs, and signals for the purpose of executing such scheme by transferring the amounts of money set forth on said schedule from the financial account of TGBG Financial Planning, LLC, to the account of GetMoni.Com at Washington Mutual Bank/JPMorgan Chase Bank, account number 357-0756856; all in violation of Section 1343 of Title 18, United States Code:

| Count | Date | Amount |
|-------|------|--------|
| 45 | 7/9/2008 | $50,000 |
| 46 | 7/10/2008 | $80,000 |
| 47 | 7/18/2008 | $50,000 |
| 48 | 7/28/2009 | $25,000 |
| 49 | 7/31/2008 | $50,000 |
| 50 | 8/4/2008 | $100,000 |
| 51 | 8/6/2008 | $500,000 |
| 52 | 8/14/2008 | $225,000 |
| 53 | 8/20/2008 | $75,000 |
| 54 | 8/28/2008 | $95,000 |
| 55 | 8/29/2009 | $70,000 |
| 56 | 9/5/2008 | $65,000 |
| 57 | 9/10/2008 | $78,000 |
| 58 | 9/12/2008 | $52,500 |
| 59 | 9/15/2008 | $165,000 |
| 60 | 9/17/2008 | $30,000 |
| 61 | 9/23/2008 | $136,800 |

| 62 | 10/3/2008 | $206,725 |
| 63 | 10/28/2008 | $4,750 |
| 64 | 10/30/2008 | $26,250 |

### COUNTS SIXTY-FIVE THROUGH SIXTY-EIGHT
### [D-3: JOHN JAMES MISSITTI]
### [26 U.S.C. § 7206(1); knowingly filing a false tax return]

That on or about the dates set forth in the following schedule of counts, in the Eastern District of Michigan, JOHN JAMES MISSITTI, a resident of Genesee Township, Michigan, willfully did make and subscribe a United States individual income tax return, form 1040, which was verified by a written declaration that it was made under the penalties of perjury and which he did not believe to be true and correct as to every material matter, and

That this income tax return, which was prepared and signed in the Eastern District of Michigan and was filed with the Internal Revenue Service, stated that his total income was the amount set forth in the "Per Return" column of the following schedule of counts, while in fact, as he then well knew and believed, his total income was substantially in excess of that sum - approximately the

amount set forth in the "Actual" column of said schedule; all in violation of Section 7206(1) of Title 26, United States Code:

**Total Income**

| Count | Filing Date | Tax year | Per Return | Actual |
|---|---|---|---|---|
| 65 | May 21, 2007 | 2006 | $203,354.00 | $677,417.00 |
| 66 | May 12, 2008 | 2007 | $254,014.00 | $489,311.00 |
| 67 | May 4, 2009 | 2008 | $220,115.00 | $261,905.00 |
| 68 | June 21, 2010 | 2009 | $56,267.00 | $98,454.25 |

## FORFEITURE ALLEGATIONS

(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461 - Criminal Forfeiture)

1.  As a result of the violations of Title 18, United States Code, Sections 1343 and 1349 set forth in Counts One through Sixty-Four of this Indictment, defendants shall forfeit to the United States any property

constituting or derived from proceeds directly or indirectly as a result of those violations, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. §2461.

2.  Such property includes, but is not limited to, a money judgment and all traceable interest and proceeds. Such sum in aggregate is property representing the proceeds of the aforementioned offenses, or is traceable to such property.

3.  If the property described above as being subject to forfeiture pursuant to 18 U.S.C. § 982, as a result of any act or omission of the defendant:

  i.  cannot be located upon the exercise of due diligence;

  ii.  has been transferred or sold to, or deposited with, a third party;

  iii.  has been placed beyond the jurisdiction of the Court;

  iv.  has been substantially diminished in value; or

  v.  has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to

seek to forfeit any other property of the defendants up to the listed value.

Dated: September 26, 2012

**THIS IS A TRUE BILL.**

<u>S/ GRAND JURY FOREPERSON</u>
GRAND JURY FOREPERSON

BARBARA L. McQUADE
United States Attorney

<u>s/ ROBERT W. HAVILAND</u> (P25665)
Assistant United States Attorney
600 Church Street
Flint, Michigan 48502-1280    (810) 766-5031
robert.haviland@usdoj.gov

<u>s/ CRAIG F. WININGER</u> (P57058)
Assistant United States Attorney
Chief, Branch Offices

Companion Case information MUST be completed by AUSA and initialed

| United States District Court<br>Eastern District of Michigan | Criminal Case Cover Sheet | Case Number<br>4:12-cr-20176 |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

**Reassignment/Recusal Information** This matter was opened in the USAO prior to August 15, 2008 [ ]

| **Companion Case Information** | Companion Case Number: |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | Judge Assigned: |
| ☐ Yes    ☐ No | AUSA's Initials: |

Case Title: USA v. RONALD LEE BRITO, et al

County where offense occurred : Genesee

Check One:     ☒ Felony          ☐ Misdemeanor          ☐ Petty

____Indictment/____Information --- no prior complaint.
____Indictment/____Information --- based upon prior complaint [Case number: _____]
_X_ Indictment/____Information --- based upon LCrR 57.10 (d) *[Complete Superseding section below]*.

**Superseding Case Information**

Superseding to Case No:  4:12-cr-20176          Judge:    Goldsmith
 ☐   Original case was terminated; no additional charges or defendants.
 ☐   Corrects errors; no additional charges or defendants.
 ☐   Involves, for plea purposes, different charges or adds counts.
 ☒   Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|
| | Counts 65 through 68 | |

Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.

September 26, 2012
Date

s/ ROBERT W. HAVILAND
Assistant United States Attorney
600 Church Street, 2nd Floor, Flint, MI 48502
Phone: 810-766-5177
Fax: 810-766-5427
robert.haviland@usdoj.gov
P-25665

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.

10/13/09